*681 OPINION.
Tritssbll,
: The testimony offered by the taxpayer shows that the interest of the deceased in the lands in question had been held since prior to 1913; that during the period from 1913 to 1922 the income from these lands had been insufficient to pay taxes and other carrying charges; and that the lands had been placed on the market for *682 sale, but no prospective buyers had appeared. The value of lands for purposes of the estate tax can not be measured wholly by the amount of income produced or by the fact that during any given period no one has cared to buy such lands. Lands may have a substantial value even though they .produce no income and the market for their sale has not yet developed. These lands were in and adjacent to a settled community, and it is well known that owners frequently hold such lands in anticipation of realizing their true value from future sales. The record of this appeal does not contain any evidence as to such true value, except the local assessor’s valuation and the Commissioner’s valuation. We are, therefore, of the opinion that the valuation placed upon these lands by the Commissioner can not be modified.
The securities held by the estate are stocks in two affiliated corporations, Avhich appear to have been engaged for many years in the lumbering business in the States of Wisconsin and Michigan. The record shows that during a period of five years prior to the decedent’s death the average net earnings of the corporation had been $25,477.51 upon an outstanding capital of $1,100,000; that no sales of stock had been made, except transfers between former stockholders and a few sales to employees. The testimony indicates that the lumbering business could not continue for more than 10 or 12 years, and that, from the average profits during the five years from 1918 to 1922, inclusive, no stockholder could anticipate a sufficient return in dividends to establish a value of the stocks even equal to the amount returned by the taxpayer.
A summary of the record shows that three officers and directors of the corporations issuing the stocks under consideration testified that in their judgment the stocks were not, during 1922, worth in excess of $125 per unit, although during the same year one of these directors purchased a number of shares at different times and at varying prices, which averaged $162.50 per unit; and in the following year these same directors authorized sales of these stock units to employees, on the basis of installment payments, at $200 per unit, and allowed the books of account of the companies to stand showing a valuation of $400 per unit, with no book provision for the depletion of timber resources. From this record we are able to find one outstanding fact upon which to base a conclusion as to values. The heirs of one deceased former stockholder, desiring to convert their securities into money, were able, during the year 1922, to sell 77 shares at an average of $162.98. We are thus led to the conclusion that the heirs of the estate here under consideration, had they offered their stock for sale, could not have obtained a higher price *683 per unit of tRe two stocks. We, therefore, hold that the unit values of the stocks of these two affiliated corporations were, at the date of decedent’s death, $162.98 per unit.